IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

SHANNON BRADLEY,

    Plaintiff,

v.

J. DARRELL HART, former Warden;
SECURITY THREAT GROUP
ADMINISTRATION, Ware State Prison;
CEDRIC TAYLOR, Warden; ALISA
HAMMOCK, Deputy Warden; and
Sergeant GABRIEL ILLA,

    Defendants.

CIVIL ACTION NO.: CV513-127

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Hays State Prison in Trion, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while he was housed at: Ware State Prison in Waycross, Georgia; Georgia State Prison in Reidsville, Georgia; Valdosta State Prison in Valdosta, Georgia; and Hays State Prison. Defendants filed a Motion to Dismiss, to which Plaintiff responded. Defendants filed a Reply. Plaintiff filed a Surreply. For the reasons which follow, Defendants' Motion should be **GRANTED** in part and **DENIED** in part.

## STATEMENT OF THE CASE

Plaintiff contends that Defendant Hart and Defendant John Doe with the security threat group at Ware State Prison were responsible for defamatory information in his file indicating falsely that he is a member of a gang and that this information was entered on

December 7, 2011. Plaintiff also contends that he was transferred to Georgia State Prison based on this erroneous information and was assaulted by his cellmate, who is a known gang member. Plaintiff asserts that he informed Defendant Jackson that his cellmate threatened to harm him because he (Plaintiff) was not a gang member, but Defendant Jackson ignored this threat. Plaintiff contends that he was taken to administrative segregation at Valdosta State Prison because Defendant Taylor deliberately placed the defamatory information back into Plaintiff's file and transferred Plaintiff. Plaintiff alleges that Defendant Illa defamed his character at Hays State Prison on January 18, 2013, because false information about Plaintiff being in a gang was entered in his file. Plaintiff contends that Defendant Hammock had him sign a form indicating his association with a gang, even though Plaintiff informed her that he is not a member of a gang. Plaintiff alleges that the actions of Defendants Hart, Doe, Taylor, Illa, and Hammock violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

Defendants contend that Plaintiff cannot sustain any monetary damages claims against them in their official capacities. Defendants assert that Plaintiff fails to state a due process, First Amendment, or deliberate indifference claim. Defendants also assert that Plaintiff is not entitled to his requests for injunctive relief or monetary damages. Finally, Defendants assert that they are entitled to qualified immunity.

## STANDARD OF REVIEW

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must

AO 72A
(Rev. 8/82)

state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

## DISCUSSION AND CITATION TO AUTHORITY

I. **Official capacities**

Defendants assert that Plaintiff's monetary damages claims against them in their official capacities are barred by the Eleventh Amendment. In response, Plaintiff states that each Defendant is being sued in his or her official and individual capacities.

A lawsuit against a correctional officer in his or her official capacity is no different from a suit against the government itself; such a defendant is immune. Smith v. Fla. Dep't of Corr., 318 F. App'x 726, 728 (11th Cir. 2008) (citing Powell v. Barrett, 496 F.3d 1288, 1308 & n.27 (11th Cir. 2007)). To be clear, a "state defendant[ ] sued in [his] official capacity for monetary damages under § 1983 [is] immune from suit under the

AO 72A
(Rev. 8/82)

Eleventh Amendment, [but he is] not immune from claims seeking prospective declaratory or injunctive relief." Id. This portion of Defendants' Motion should be **granted**, and Plaintiff's monetary damages claims against Defendants in their official capacities should be dismissed.

## II. Due process claims

Defendants contend that a fundamental right was not implicated by their alleged actions, as inmates do not have a liberty interest in their security classifications or being housed at a particular prison facility. Defendants assert that Plaintiff admits that his transfer to Georgia State Prison was due to his alleged gang validation, that his assignment to segregation at Valdosta State Prison was due to an incident at that Prison, and that his "assaultive" history led to his assignment to the tier program at Hays State Prison. Defendants assert, even taking Plaintiff's allegations as true, he fails to state a due process claim. Specifically, Defendants assert that, to the extent that Plaintiff seeks to allege a claim based upon Defendants Hart, Taylor, or Illa's validation of his gang membership, Plaintiff fails to sufficiently allege a liberty interest implicating the due process clause. Defendants also assert that Plaintiff's allegations that his placement in segregation at Valdosta State Prison "limited [his] communication with other inmates and associating," placed him in danger, and led to concerns of "hearsay rumors to spread," and claims that Defendant Hammock was aware that he would suffer a loss of privileges if he was validated as a gang member and that he "should not have to wait until more injuries accrue to complain[ ]" do not set forth a viable due process claim. (Doc. No. 31, p. 12) (quoting Doc. No 14-1, pp. 11, 17). Defendants aver that nothing in Plaintiff's Complaint(s) suggests that his placement in segregation was a

4

"dramatic departure" from his ordinary conditions of confinement or that it constituted a major disruption in his environment such that it is "an atypical and significant hardship", that the conditions of his confinement in administrative segregation differ from confinement in the general population, or that he was singled out for harsher treatment than is generally accorded prisoners in administrative segregation.

Plaintiff asserts that he was placed in segregation on December 17, 2011, and his placement continues to this day due to negative entries in his file from the security threat group. Plaintiff also asserts that he was placed in segregation without notice or a hearing, as other inmates are given, "which creates a[ ] liberty interest as of gaining a detail job, participating in programs[ ] and activities that are not provided for or given while on lockdown." (Doc. No. 35, p. 2; see also, Doc. No. 35, p. 8). Plaintiff alleges that an inmate who has been classified as a security threat is to be notified of that fact and given an opportunity to respond to that classification. Plaintiff also alleges that prisoners being considered for placement in close security must receive notification of the charges against them more than 24 hours prior to a hearing.

A.  **Procedural due process**[1]

An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Shaarbay v. Palm Beach Cnty. Jail, 350 F. App'x 359, 361 (11th Cir. 2009) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)).

---

[1] It is not entirely clear from Plaintiff's Amended Complaint that he sets forth a procedural due process claim. Based on Plaintiff's Response to Defendants' Motion, however, it appears that he contends that the procedures which were not being followed resulted in violations of his right to due process. (Doc. No. 40, p. 1).

5

Constitutionally adequate process requires compliance with the minimum due process protections accorded to an inmate in prison disciplinary proceedings: (1) the right to receive written notice of the charges against him at least 24 hours before his hearing; (2) the right to call witnesses and present documentary evidence, where doing so would not be unduly hazardous to institutional safety or correctional goals; and (3) the right to receive a written statement setting forth the disciplinary committee's findings of fact. Asad v. Crosby, 158 F. App'x 166, 173 (11th Cir. 2005) (citing Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974)).

Plaintiff fails to allege any facts leading to the plausibility that his placement in administrative segregation was punitive in nature. In fact, this Court has noted that a plaintiff's placement in administrative segregation is a non-punitive action. (Case No. CV512-1, Doc. Nos. 52, 60). Because Plaintiff was not placed in punitive segregation and was not charged with any infraction of prison rules or regulations, there was no attendant duty, under due process principles, to notify him of any charges or reasons for his placement in segregation. Plaintiff cannot sustain a procedural due process claim, and this portion of Defendants' Motion should be **granted**.

### B. Substantive Due Process

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. CONST. AMEND. XIV). The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State

AO 72A
(Rev. 8/82)

has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 1290–91 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In Sandin, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause. 515 U.S. at 472. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit. Id. at 475. After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. Id. at 485. The Court determined that the conditions of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody. Id. at 486. Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. The Court concluded that the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. Thus, the Court determined that Conner was not entitled to due process protection. Id. at 487.

In his Amended Complaint, Plaintiff asserts that he has been deprived of "privileges, personal hygiene and property" while he has been placed in the Tier II program at Hays State Prison. (Doc. No. 14-1, p. 16). Plaintiff contends in his Surreply

AO 72A
(Rev. 8/82)

that he is not "arguing in no type (sic) of way that the prison programs that are not provided to him leads to a due process violation." (Doc. No. 40, p. 1).

Plaintiff provides no factual allegations which are any more than conclusory. Plaintiff fails to state what privileges, personal hygiene items, or property he has been denied due to his placement in the tier program at Hays State Prison. Additionally, Plaintiff fails to state what liberty interest is at stake from his placement in the tier program. Moreover, Plaintiff fails to set forth any facts which plausibly could lead to the conclusion that the conditions of the tier program impose an atypical and significant hardship on him relative to the ordinary incidents of prison life. In short, Plaintiff fails to set forth facts sufficient to render his due process claim plausible. This portion of Defendants' Motion should be **granted**.

### III. First Amendment claims

#### A. Retaliation

Defendants note that Plaintiff's factual assertions belie his contentions that Defendants retaliated against him. For instance, Defendants assert that, even though Plaintiff contends that Defendant Hart transferred him from Ware State Prison to Georgia State Prison because of an "evil intent to avoid redress of grievance," he admits that his transfer was due to his validation as a gang member. Defendants contend that Plaintiff states in a conclusory manner that Defendant Taylor left the gang validation in Plaintiff's file and continued to house Plaintiff in segregation because he kept complaining. Defendants also contend that Plaintiff admits that he has no knowledge of whether Defendant Taylor is actually responsible for the gang validation in his file. Defendants further contend that Plaintiff admits that his placement in

segregation at Valdosta State Prison was due to an incident which occurred at that facility. Defendants allege that Plaintiff admits that his placement in segregation at Hays State Prison was due to his assaultive history record, at least in part.

Plaintiff alleges that, for several months after his cellmate at Georgia State Prison assaulted him, he filed grievances but never received responses on those grievances.[2] Plaintiff also alleges that he filed several grievances while he was housed at Valdosta State Prison and either received an unsatisfactory response or was told that he filed a grievance about a non-grievable issue (i.e., his validation as being a gang member). Plaintiff contends that he was able to file a grievance while he was housed at Hays State Prison about being validated as a possible gang member and for having an assaultive history and was informed that he was validated again as being a gang member. Plaintiff also contends that he continued filing grievances and received similar responses.

"To state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal citations omitted). Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." Id. A prisoner can establish retaliation by demonstrating that the prison officials' actions were "the result of his having filed a grievance [or lawsuit] concerning the conditions of his imprisonment." Id.

In Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005), the Eleventh Circuit noted that, "[t]o state a retaliation claim, the commonly accepted formulation requires

---

[2] Plaintiff makes a contention that he asked for a grievance form after he left medical but was not given one. However, in almost the same breath, Plaintiff asserts that he asked for a grievance form two (2) days later and was provided with one.

9

that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." The second prong of this test was at issue in Bennett. The Eleventh Circuit adopted an objective standard when evaluating this prong, in accord with other Circuits, and held that "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Id. at 1254.

Plaintiff fails to establish that any of Defendants' alleged actions were due to Plaintiff having filed grievances and/or lawsuits. Instead, Plaintiff repeatedly states that Defendants' alleged actions were due to his validation as a gang member. Even if this validation is incorrect or inaccurate, Plaintiff's status or non-status as a gang member is not protected speech and is not entitled to any heightened protection under the law. More germane to Plaintiff's retaliation claims is Plaintiff's admissions, as noted above, that he filed numerous grievances while he was housed at Georgia State Prison, Valdosta State Prison, and Hays State Prison. Plaintiff has also filed the instant cause of action. Plaintiff's own admissions and actions reveal that, even if Defendants acted with retaliatory intent, Plaintiff's ability to exercise his First Amendment rights has not been chilled or otherwise been hindered. Plaintiff's retaliation claims are not plausible. This portion of Defendants' Motion should be **granted.**

### B. Defamation

Defendants assert that Plaintiff cannot sustain a defamation claim in this section 1983 action because such a claim is a tort claim, which is cognizable under State law,

not federal constitutional law. A plaintiff seeking to file a § 1983 claim must satisfy two (2) basic requirements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id. Actions alleging defamation of character or injury to reputation are not cognizable in a § 1983 action. Paul v. Davis, 424 U.S. 693, 710–12 (1976); Von Stein v. Brescher, 904 F.2d 572, 583 (11th Cir. 1990). As a matter of law, Plaintiff cannot sustain a defamation claim in this cause of action. This portion of Defendants' Motion should be **granted**.

## IV.  Deliberate indifference

Defendants aver that Plaintiff makes no allegation that he faced a specific risk to his safety. Defendants note that Plaintiff's deliberate indifference claim is based on his assertion that Defendant Hart's alleged emergency transfer from Ware State Prison to Georgia State Prison resulted in an assault two (2) months after this transfer. Defendants contend that Plaintiff fails to set forth any facts which establish a causal link between Plaintiff's transfer and this assault.

Plaintiff alleges that "prison officials" were deliberately indifferent toward him "to avoid redress of grievance as a 1st Amendment right by transferal (sic) which also lead to substantial risk to Plaintiff's safety due to wrongful validation[.]" (Doc. No. 35, pp. 2–3). Plaintiff asserts that he informed Defendant Jackson (at Georgia State Prison) that he was not a member of the good fella/mob gang and that his cellmate (who allegedly is a member of this group) threatened to physically assault Plaintiff if he did not leave the

AO 72A
(Rev. 8/82)

cell because he was not a good fella/gang member. Plaintiff asserts that Defendant Jackson told Plaintiff that he and his cellmate would have to find a way to get along and walked away from the cell. Plaintiff contends that his cellmate assaulted him soon thereafter, and he sustained physical injuries as a result of this assault. Plaintiff contends that "Defendants" knew or should have known that he faced a serious risk to his safety by leaving an incorrect gang affiliation entry in his file. (Doc. No. 35, p. 6).

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. "'To show a violation of [his] Eighth Amendment rights, [a p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010) (quoting Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga., 400 F.3d 1313, 1319 (11th Cir. 2005)). "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Purcell, 400 F.3d at 1319-20). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." Smith, 368 F. App'x at 14. In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3)

AO 72A
(Rev. 8/82)

by conduct that is more than gross negligence." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010). Prison officials are not held liable for every attack by one inmate upon another, Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986), nor are they guarantors of a prisoner's safety. Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990). Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

Like any deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective inquiry. Chandler v. Crosby, 379 F.3d 1278, 1289–90 (11th Cir. 2004). Under the objective component, a plaintiff must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Miller v. King, 384 F.3d 1248, 1260–61 (11th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). To prove deliberate indifference, the prisoner must show that prison officials "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition at issue. Id. (quoting Chandler, 379 F.3d at 1289–90).

The only plausible deliberate indifference claim Plaintiff makes is based on his factual allegations against Defendant Jackson. Specifically, Plaintiff alleges that he told Defendant Jackson that his cellmate threatened to assault him, Defendant Jackson essentially ignored this information, and Plaintiff's cellmate assaulted him not long after Plaintiff told Defendant Jackson about this threat. To the extent Defendants have

AO 72A
(Rev. 8/82)

moved for the dismissal of the entirety of Plaintiff's deliberate indifference claims, the portion of Defendants' Motion regarding Defendant Jackson should be **denied**.[3] In contrast, Plaintiff fails to set forth a plausible deliberate indifference claim against the remaining Defendants. Plaintiff's allegations that "Defendants" or "prison officials" knew or should have known that he faced a risk to his safety based on his validation are no more than conclusory. Further, these allegations do not reveal that it was plausible that the remaining Defendants had subjective knowledge of an objective risk to Plaintiff's safety and ignored that risk. This portion of Defendants' Motion should be **granted**.

V.  **Injunctive relief**

Defendants assert that Plaintiff's requests for injunctive relief in the form of the removal of entries in his file and an order from this Court for Defendants to stop their pattern of abuse cannot be granted. Defendants allege that these requests are not specific enough to warrant relief. Defendants also allege that Plaintiff's requests are not precisely or narrowly drawn, nor are his requests the least intrusive means to achieve his relief.

Section 3626 of Title 18, United States Code, which provides for appropriate remedies in prisoner litigation, provides, in relevant part:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

---

[3] This portion of Defendants' Motion focuses solely on Plaintiff's allegations against Defendant Hart. (Doc. No. 31, pp. 18–19).

AO 72A
(Rev. 8/82)

18 U.S.C.A. § 3626(a)(1)(A). It does not appear to be appropriate for this Court to order that prison officials remove entries from Plaintiff's file, which may or may not be accurate. In addition, this Court cannot order that prison officials stop a pattern of abuse. To the extent that Plaintiff contends that any pattern of abuse resulting in a constitutional violation may occur in the future, Plaintiff may seek redress for any perceived constitutional violation in the appropriate court. This portion of Defendants' Motion should be **granted**.

### VI. Monetary damages

Defendants contend that Plaintiff has not alleged that he suffered any physical injury as a result of Defendants' action. As a result, Defendants assert that Plaintiff is not entitled to relief, and his Complaint should be dismissed.

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976–79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532. In Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit stated that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the

constitutional rights that the defendant violated. Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a *de minim[i]s* physical injury." Id. (internal citations omitted) (alterations in original).

Contrary to Defendants' assertion, Plaintiff alleges that he was physically injured as a result of his cellmate assaulting him and had to go to the medical unit at Georgia State Prison. It is at least plausible that Plaintiff would not have been assaulted by his cellmate if Defendant Jackson had removed Plaintiff or his cellmate from the cell after Plaintiff informed Defendant Jackson that his cellmate had threatened Plaintiff. This portion of Defendants' Motion should be **denied**.

### VII. Qualified immunity

Defendants contend that Plaintiff fails to set forth a plausible violation of a clearly established right, and accordingly, they are entitled to qualified immunity.

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities, so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). Government officials must first prove that they were acting within their discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081-82 (11th Cir. 2004). "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." Hill v. DeKalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1185 n. 17 (11th

Cir.1994). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the Defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: the court must determine whether plaintiff's allegations, if true, establish a constitutional violation, and whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001)[4]; Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

As noted, Plaintiff sets forth a plausible deliberate indifference claim against Defendant Jackson. It was clearly established in 2012 that a prison official could not be deliberately indifferent to a serious risk of harm to an inmate. This portion of Defendants' Motion should be **denied**.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion to Dismiss be **GRANTED** in part and **DENIED** in part. Plaintiff's deliberate indifference claim against Defendant Jackson in his individual capacity should remain pending. Otherwise, Plaintiff's claims and all other Defendants should be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 26th day of January, 2015.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[4] In Pearson v. Callahan, 555 U.S. 223, 236 (2009), the Supreme Court held that courts can exercise discretion in deciding which of the two Saucier prongs should be addressed first in light of the particular case at hand.