# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

SHANNON BRADLEY,

    Plaintiff,

v.

COI REGINALD JACKSON,

    Defendant.

CIVIL ACTION NO.: 5:13-cv-127

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Hays State Prison in Trion, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983, as amended, which in relevant part contested certain conditions of his confinement while he was housed at Georgia State Prison in Reidsville, Georgia.[1] (Docs. 1, 14, 20.) Defendant Jackson filed a Motion to Dismiss, (doc. 57), and Plaintiff filed a Response. (Doc. 62.) Defendant filed a Reply. (Doc. 65.) Plaintiff filed a Surreply. (Doc. 66.) For the reasons which follow, I **RECOMMEND** that the Court **GRANT** Defendant's Motion to Dismiss, **DISMISS** Plaintiff's Complaint, as amended, without prejudice, based on Plaintiff's failure to exhaust his administrative remedies prior to the filing of his Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

## BACKGROUND

Plaintiff filed a cause of action pursuant to 42 U.S.C. § 1983 on December 4, 2013, contesting certain conditions of his confinement at Ware State Prison in Waycross, Georgia;

---

[1] As noted below, Plaintiff alleged constitutional violations in his Complaint which allegedly occurred at several penal institutions in this District and the Middle District of Georgia.

Georgia State Prison in Reidsville, Georgia; Valdosta State Prison in Valdosta, Georgia; and Hays State Prison in Trion, Georgia. (Doc. 1.) As pertinent to the present Motion, Plaintiff alleged in his original Complaint and the amendments thereto that members of the Ware State Prison staff were responsible for placing defamatory information in his file, which falsely indicated he is a member of a gang. Plaintiff contended he was transferred to Georgia State Prison as a result of this information in December 2011. (Doc. 1, p. 5; Doc. 20, p. 5.)

Plaintiff stated that Defendant, a correctional officer at Georgia State Prison, was deliberately indifferent to his safety on or about February 21, 2012. Specifically, Plaintiff stated an unknown inmate was moved to his cell on February 20, 2012. (Doc. 20, p. 5.) Plaintiff asserted this inmate began questioning him about the "Good Fellas" gang and stated that he was a member of this gang. Plaintiff alleged he told this inmate he had no knowledge about this gang. Plaintiff also alleged he asked Defendant to move him out of this cell on February 21, 2012, because he "was having problems with his cell mate." (Id. & at p. 7.) According to Plaintiff, he told Defendant that his cell mate told him "one of us is going to have [to] go." (Id. at p. 7.) Plaintiff contended Defendant did not notify the officer in charge about this issue and told Plaintiff he was not going to move anyone, so Plaintiff and his cell mate would have to find a way to get along with each other. Plaintiff asserted Defendant walked away from the cell door, and his cell mate assaulted him immediately thereafter. (Id.)

The Court directed service of Plaintiff's Complaint, as twice amended, on Defendant by Order dated July 27, 2015.[2] (Doc. 54.) Defendant then filed the instant Motion to Dismiss.

---

[2] Service of Plaintiff's Complaint upon Defendant occurred after the other named Defendants moved for dismissal of Plaintiff's claims against them, this Court granted that motion, and Plaintiff filed an interlocutory appeal of this Court's Order. (Docs. 31, 41, 44, 47.)

DISCUSSION

Defendant raises several grounds for dismissal of Plaintiff's Complaint in his Motion. First, Defendant asserts Plaintiff failed to exhaust his administrative remedies prior to filing his Complaint. Next, Defendant contends Plaintiff cannot sustain his Eighth Amendment claims against him based on Plaintiff's allegations that Defendant failed to protect him from a known threat to his safety. Defendant also maintains he is entitled to qualified immunity.

As set forth below, the undersigned agrees Plaintiff failed to exhaust his administrative remedies prior to the filing of his Complaint, and Defendant's Motion is due to be granted on this basis. Consequently, it is unnecessary to address the remaining grounds for dismissal in Defendant's Motion.

**I.     Standard of Review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings

and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

## II. Exhaustion Requirements

### A. Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Johnson, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require

more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). Nevertheless, the purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp.2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

**B.     The Georgia Department of Corrections' Grievance Procedure**

Standard Operating Procedure ("SOP") IIB05-0001 sets forth the three (3) steps an inmate had to complete under the Georgia Department of Corrections' grievance procedure in effect at the time the events giving rise to this cause of action arose.[3] First, an inmate had to file an informal grievance "no later than 10 calendar days from the date" the inmate was aware or should have been aware "of the facts giving rise to the grievance." (Doc. 59, p. 15.)  An inmate was to be given a written response to his informal grievance within ten (10) calendar days of the counselor's receipt of the inmate's informal grievance.  (Id. at p. 16.)  If the inmate was dissatisfied with the resolution of his informal grievance, he was to file a formal grievance within five (5) days of his receipt of the written resolution of his informal grievance.  (Id.)  Once an inmate received the Warden's response to his formal grievance and was dissatisfied with that response, he had five (5) business days to file an appeal with the Commissioner.  (Id.)  In the alternative, if the Warden's response time was exceeded, the inmate was to file an appeal of his grievance with the Commissioner's Office, unless a one-time extension of ten days' time was authorized and the inmate was notified.  (Id. at p. 14.)  The Commissioner's Office had 90 calendar days after receipt of the appeal to respond.  (Id. at p. 19.)  Time limits could be waived for "good cause" shown.  (Id. at p. 17.)

An inmate could file a grievance regarding "[a]ny condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the Department of Corrections[ ]", other than, for example, housing assignments.  (Id. at p. 13.)  Grievances were to be "filled out using blue or black ink."  (Id. at p. 14.)  If an inmate attempted "to grieve an item that is not grievable . . ., is out of time, . . . or otherwise does not comply with the requirements of [SOP

---

[3] This SOP was amended with an effective date of December 10, 2012, and no longer requires an inmate to file an informal grievance. (Doc. 59, p. 4.) However, because this cause of action arose prior to the amendment, the previous version of this SOP is relevant for this Court's purposes.

IIB05-0001], it will be rejected, noting the specific reason for this action." (Id.) An inmate was limited to having two pending, non-emergency grievances at the institutional level per week. (Id.)

With these standards and procedures in mind, the Court now addresses Defendant's argument that Plaintiff did not exhaust his administrative remedies as to his claims against Defendant.

### III. Assessment of Plaintiff's Exhaustion

Defendant asserts Plaintiff filed three grievances while he was housed at Georgia State Prison from 2011 until 2012. Defendant alleges all three of these grievances were rejected. (Doc. 57-1, p. 9.) Defendant also alleges that Plaintiff grieved about topics which were unrelated to Plaintiff's claims against Defendant in each of these three grievances. Thus, Defendant contends Plaintiff failed to exhaust his administrative remedies prior to filing this cause of action, as set forth in the Georgia Department of Corrections' grievance procedures. (Id.) Defendant offers the Affidavits of Jacquelyn Ayeni, a counselor and the Grievance Coordinator at Georgia State Prison; Murriel Jackson, the Administrative Segregation Counselor at Georgia State Prison at the time of events giving rise to Plaintiff's Complaint; and Milton Smith, the former Grievance Coordinator at Georgia State Prison, in support of his contention that Plaintiff failed to exhaust his administrative remedies prior to filing this cause of action. (Doc. 59, pp. 2–9; Docs. 65-1, 65-2.)

In response, Plaintiff states that he asked for a grievance form on several occasions on February 21, 2012, and was not given one on that date. (Doc. 62, p. 3.) However, Plaintiff maintains he was given a grievance form on February 23, 2012, and he gave it to the Administrative Segregation Counselor. Plaintiff asserts he never received a response. (Id.)

Plaintiff also maintains he did exhaust his administrative remedies, but his grievance was not processed per policy. According to Plaintiff, "staff members" were aware of "the incident and were trying to help out a fellow staff member grieved upon or civil action(s) being brought upon him in a timely matter (sic)." (Id.) Plaintiff aver he "made efforts to exhaust's (sic) his remedies but they were 'thwart' (sic)[.]" (Id.)

Defendant counters that Plaintiff admits he had the ability to submit a timely grievance, yet he fails to submit any evidence supporting his claim that the grievance was not processed properly or was lost. (Doc. 65, p. 2.) Defendant asserts that, even assuming Plaintiff did file a grievance, Plaintiff failed to exhaust his administrative remedies because he did not file an appeal of the alleged non-response to this grievance.

Plaintiff asserts that the only time an inmate can file an appeal is when a decision is made at the institutional level. (Doc. 66, p. 1.) Plaintiff also asserts the counselors only come by the cells once a week to gather grievances, and that often occurred when inmates were not actually in their cells. Plaintiff contends he and other inmates were told to place their grievances through the sides of their cell doors so that they would not miss the counselors. Plaintiff explains that, due to the grievance not being turned in or received, "any of the staff members could have thwart (sic) me from exhausting my remedies because I am unable to see out of the [tray] flaps which are closed of whom (sic) comes by a (sic) take's (sic) them[.]" (Id. at p. 2.)

### A. Informal Grievance Number 106965

Plaintiff filed Informal Grievance Number 106965 on December 17, 2011, and alleged he had taken some pictures at Ware State Prison and did not receive these pictures upon his arrival at Georgia State Prison. This informal grievance was rejected, (doc. 59, p. 28), and Plaintiff did not resubmit this informal grievance or otherwise appeal the rejection. (Id. at p. 26.)

### B. Informal Grievance Number 108518

Plaintiff's Informal Grievance Number 108518 is dated January 16, 2012, and he stated he slipped and fell when he was coming out of the shower that day. Plaintiff asserted his hands were cuffed behind his back, causing him to hit his face, to bruise his left shoulder, and to injure his knee. (Doc. 59, p. 29.) This informal grievance was rejected. (Id. at p. 26.)

### C. Informal Grievance Number 109141

Plaintiff then filed Informal Grievance Number 109141 on or after January 19, 2012, in which he complained about the same events set forth in Informal Grievance Number 108518. In this Informal Grievance, Plaintiff stated the informal grievance he filed on the date of the shower incident (January 16, 2012), was rejected on January 19, 2012, because he had set forth too many issues in his previously-filed informal grievance. (Doc. 59, p. 30.) Informal Grievance Number 109141 was also rejected, (id.), and there is no evidence Plaintiff resubmitted it. (Id. at p. 26.)

### D. Whether Plaintiff's Informal Grievances Constitute Exhaustion

The filing of these informal grievances does not satisfy Plaintiff's obligation to have exhausted his administrative remedies pertaining to his claims against Defendant prior to filing his Complaint. The subject matters contained in and the dates of these grievances are not related in any way to the claims against Defendant which Plaintiff set forth in his Complaint, as amended. Accepting as true Plaintiff's contentions that he wrote a grievance, presumably regarding the events giving rise to Plaintiff's claims against Defendant, on or about February 23, 2012, gave this grievance to the administrative segregation counselor, and did not receive a response after the passage of several weeks' time, Plaintiff did not exhaust his administrative remedies under the first Turner step. If Plaintiff had not received a response to his grievance after several weeks had elapsed, he then was to file an appeal to properly exhaust his

administrative remedies. (Doc. 59, p. 14.) Moreover, contrary to Plaintiff's assertion, the warden's failure to respond to his grievance did not excuse Plaintiff from further pursuit of his administrative remedies. Bettencourt v. Owens, 542 F. App'x 730, 734 (11th Cir. 2013) ("Despite [the plaintiff's] protestations to the contrary, when the warden failed to respond to the formal grievance within the allotted thirty-day period [the plaintiff] was required to pursue an appeal in order to exhaust his claim."); Milton v. Fleckenstein, No. 6:10-CV-377, 2011 WL 208310, at *1 (M.D. Fla. Jan. 21, 2011) ("although Plaintiff never received responses to his formal grievances, grievances must be pursued through to the final level, even where no response is received."). There is nothing before the Court indicating Plaintiff filed an appeal or otherwise pursued this grievance.

If, on the other hand, the Court accepts as true Plaintiff's contention that he attempted to access the grievance procedures and his efforts were thwarted by unnamed "staff members", Plaintiff arguably exhausted his available administrative remedies under the first Turner step. However, in proceeding to the second Turner step and resolving the parties' factual dispute, it is apparent Plaintiff did not exhaust his administrative remedies as to his claims against Defendant.

The evidence before the Court belies Plaintiff's contention that some unnamed staff members thwarted his efforts to exhaust his administrative remedies. First, as discussed above, Plaintiff was able to access the grievance procedures at Georgia State Prison in 2011 and 2012, as shown by the filing of three informal grievances, two of which were filed a few weeks before the events giving rise to Plaintiff's claims against Defendant. Additionally, Plaintiff's resubmission of rejected Informal Grievance Number 108518 in the form of Informal Grievance Number 109141 to correct the reason for the original rejection indicates Plaintiff's understanding of the requirements of SOP IIB05-0001. Further, Murriel Jackson, who was the Administrative

Segregation Counselor at Georgia State Prison in February 2012, declared she did not receive any written grievances from Plaintiff on or after February 20, 2012, concerning an incident occurring on that date or any failure of an officer to protect Plaintiff from a known threat to his safety. (Doc. 65-1, p. 3.) This negates Plaintiff's assertion that he gave a written complaint to the Administrative Segregation Counselor on or after February 23, 2012, and Plaintiff offers no evidence to refute Jackson's declaration. Finally, and as noted above, even assuming Plaintiff did submit a written grievance to Jackson on or after February 23, 2012, he also asserts that several weeks passed without receiving a response. Plaintiff did not file an appeal, as he could have done and was required to do, and offers no explanation as to why he failed to comply with the requirements of the grievance procedures.

Put succinctly, even accepting Plaintiff's version of the facts as true and viewing all of the facts in the light most favorable to Plaintiff, he did not exhaust his administrative remedies prior to filing his Complaint. For these reasons, the Court should **GRANT** this portion of Defendant's Motion to Dismiss, and **DISMISS** Plaintiff's Complaint, as amended, without prejudice. As a result, it is unnecessary to address the remaining portion of Defendant's Motion.

## IV. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[4] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]"). An appeal cannot be

---

[4] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

12

taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendant's Motion to Dismiss, Plaintiff's potential *in forma pauperis* status on appeal should be **DENIED**, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendant's Motion to Dismiss, (doc. 57), **DISMISS** Plaintiff's Complaint, as amended, without prejudice, based on Plaintiff's failure to exhaust his administrative remedies prior to the filing of his Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address

any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 24th day of March, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA